# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re: Nazma Khatoon Rizvi, | Case No. 21-45387 |
| | Chapter 13 |
| Debtor. | Hon. Mark A. Randon |
| _____/ | |

## OBJECTION BY THE UNITED STATES
## TO CONFIRMATION OF DEBTOR'S PROPOSED PLAN

The United States of America, by its attorneys, Acting United States Attorney, Saima S. Mohsin, and Assistant United States Attorney, Kevin R. Erskine, on behalf of the Internal Revenue Service, objects to the confirmation of Nazma Khatoon Rizvi's ("Debtor") proposed Chapter 13 plan ("Plan") for the following reasons:

1. Debtor filed a voluntary petition for protection under Chapter 13 of the Bankruptcy Code on June 24, 2021 and filed the Plan on June 25, 2021. Broadly characterized, the Plan proposes inadequate treatment of the IRS's claims to be funded, in part, by monthly payments that exceed her Social Security income and also funded, in part, by a balloon payment from a distant and speculative sale of her residence, the very same residence that she contracted to sell pre-petition but now seeks to retain through the Plan's proposed rejection of the pre-petition sales agreement.

2. The IRS's proof of claim is in the amount of $376,827.14 and consists of:

| | |
|---|---:|
| Secured Claim: | $289,550.68 |
| Priority Claim: | $728.27 |
| General Unsecured Claim: | $86,548.19 |
| **Total** | **$376,827.14** |

3. **Failure to Properly Treat the Priority Claim.** The United States objects to confirmation because the proposed Chapter 13 plan fails to provide for payment of the priority tax liabilities as stated on the IRS's proof of claim. The IRS's priority claim is currently $728.27 and, to be confirmed, Debtor's Plan must provide for the full payment, in deferred cash payments, of all claims entitled to priority under 11 U.S.C. § 1322(a)(2).[1]

4. **Failure to Properly Treat the Secured Claim.** The Plan's proposed treatment for the IRS's secured claim is somewhat confusing in as much as it appears to inexplicably split the secured claim into three separate components: the first in the amount of $99,732.90, the second, $95,463.41, and the third, $83,930.44.[2] Debtor proposes to treat each of these as Class 5.2 claims, to be "modified", with 0% interest, and "*not* to be paid Equal Monthly payments 11 U.S.C. § 1325(a)(5)(B)." Plan, Section III, E, Class 5.2 (emphasis added). The Plan further

---

[1] All code sections cited here, unless otherwise stated, are to the Bankruptcy Code, Title 11.
[2] Taken together, this scheduled amount is still less than the IRS's duly filed secured claim.

proposes a monthly plan payment of $2,600 for 59 months and then, "Debtor shall sell her home during year 5 of her Chapter 13 Plan and use $212,600.00 to fund her Chapter 13 Plan in month 60." Plan, Section IV, Nonstandard Plan Provisions. The Plan's proposed treatment of the IRS's secured claim violates the Bankruptcy Code and the IRS does not consent to the alternative treatment of the secured claim. *See* § 1325(a)(5)(A).

### A. Plan Must Provide for Equal Monthly Payments

A Chapter 13 debtor generally has three options to deal with a secured claim if the plan is to be confirmed: pay, surrender, or settle. That is, the debtor may pay the claim in the plan in the amount and manner prescribed by the Bankruptcy Code, surrender the property that secures the lien, or convince the creditor to settle for other treatment. § 1325(a)(5)(A)-(C); *Associates Commercial. Corp. v. Rash*, 520 U.S. 953, 956-57, 117 S. Ct. 1879, 138 L. Ed. 2d 148 (1997). In this instance, surrender isn't available[3] and the IRS hasn't agreed to settle for any alternative treatment. § 1325(a)(5)(A), (C). Therefore, Debtor's Plan must pay the claim in the amount and manner required by the Bankruptcy Code. § 1325(a)(5)(B).

---

[3] Surrender is not an option available to Debtor because, among other reasons, the IRS's claim is secured by property that is exempt from levy. *See* 26 U.S.C. § 6334(a), (e). *See, e.g., Internal Revenue Service v. White (In re White)*, 487 F.3d 200, 201 (4th Cir. 2007); *In re Reitberger*, 456 B.R. 406, 407 (Bankr. D. Minn. 2011) ("Federal tax liens are not subject to the surrender provisions of 11 U.S.C. § 1325(a)(5)(C).")

3

21-45387-mar    Doc 35    Filed 08/27/21    Entered 08/27/21 15:56:45    Page 3 of 15

Section 1325(a)(5)(B) provides that for each secured claim provided for by the plan, the claim must be paid in full, § 1325(a)(5)(B)(ii), and that the periodic payments "shall be in equal monthly amounts…" § 1325(a)(5)(B)(iii)(I). It is axiomatic that Debtor's proposal to make 60 payments— $2,600 per month for 59 months followed by a balloon payment of $212,600.00 at the very end of the Plan—does not provide "equal monthly amounts" as required by the Code. *Id.*

The Bankruptcy Appellate Panel of the First Circuit thoroughly addressed this issue of Chapter 13 balloon payments in the case of *In re Hamilton*, 401 B.R. 539 (B.A.P. 1st Cir. 2009):

> BAPCPA amended § 1325(a)(5)(B) by requiring that, with respect to every allowed secured claim provided for by the plan, periodic payments be made in equal monthly amounts. *See* § 1325(a)(5)(B)(iii)(I); 5 Keith M. Lundin, Chapter 13 Bankruptcy § 448.1 (3d ed. 2000). Congress enacted the equal payment provision and a companion provision extending the concept of adequate protection (formerly a pre-confirmation requirement) to post-confirmation plan payments in response to creditors' concerns about balloon and quarterly payments. *In re Luckett*, [ No. 07-24706-SVK,] 2007 WL 3125278, at *1 (Bankr. E.D. Wis. Oct. 24, 2007). The equal payment provision prevents debtors from back loading payments to secured creditors or paying them other than on a monthly basis. *Id.*
>
> Overwhelmingly, courts have held that by its very terms, a balloon payment is not equal to the payment that preceded it, and thus violates § 1325(a)(5)(B)(iii)(I) with respect to periodic payments on a secured claim under a chapter 13 plan. *See In re Carman*, [No. 07-44271 JBR,] 2008 WL 2909863, at *1 (Bankr. D. Mass. July 25, 2008); *In re Wallace*, [No. 07-10728,] 2007 WL 3531551 (Bankr. M.D. N.C. Nov. 12, 2007); *In re Luckett*, 2007 WL 3125278, at *2; *In re Newberry*, [No. 07 10170,] 2007 WL 2029312, at *3–4 (Bankr. D. Vt. July 10, 2007);

4

> *In re Lemieux*, 347 B.R. 460, 463 (Bankr. D. Mass. 2006); *In re Wagner*, 342 B.R. 766, 772 (Bankr. E.D. Tenn. 2006); *In re DeSardi*, 340 B.R. 790, 805 (Bankr. S.D. Tex. 2006); *see also* William J. McLeod, *Trick or Treat: A (Not–So)–Scary Look at Equal Monthly Payments Under § 1325(a)(5)*, 24–Oct. Am. Bankr. Inst. J. 14 (2008); *but see In re Davis*, 343 B.R. 326, 328 (Bankr. M.D. Fla. 2006). Here, the Debtor's plan provides for a balloon payment at or near completion of the plan. By its very terms, the balloon payment is not equal to the preceding payments and therefore it is prohibited by § 1325(a)(5)(B)(iii)(I). *See id*.

*In re Hamilton*, 401 B.R. at 543.[4] *See, e.g., In re Nichols*, 440 F.3d 850, 857 n.6 (6th Cir. 2006) (considering the pre-BAPCPA version of the Code, the Court observed that, "Unlike the previous section 1325, the new [BAPCPA] language seems to require that payments made after confirmation be in equal amounts. . . ."); *In re Benedicto*, 587 B.R. 573, 576-78 (Bankr. S.D. Fla. 2018) (balloon payment is prohibited because the "plain language of the statute, which is clear and, therefore, must be enforced as written."); *In re White*, 564 B.R. 883, 888-89 (Bankr. W.D. La. 2017) (collecting cases and finding that periodic payments in "'equal monthly amounts' means that the amount paid each month on such claims must be the same" and that the Congressional intent supports this interpretation); *In re Soppick*, 516

---

[4] It is worth noting that *In re Davis*, 343 B.R. 326 (Bankr. M.D. Fla. 2006), cited in *Hamilton*, allowed unequal payments only with respect to cure of prepetition default and maintenance of payments on long-term debt on which the last payment was due after the final payment under the plan was due. *Id*. at 328. The *Davis* court concluded that § 1322's modification language overrode §1325's equal payment requirement. *Id*. Here, the liability at issue is IRS tax debt and there is no long-term debt for which a payment is due after the final payment under the plan. As a result, § 1322 and *Davis* have no relevance, instructive or otherwise, to this case.

B.R. 733, 754, 762 (Bankr. E.D. Pa. 2014) (monthly payments "followed by a lump sum or balloon payment during or at the end of the plan" is in conflict with the Code); *In re Spark*, 509 B.R. 728, 730 (Bankr. M.D. Fla. 2014) ("When Congress passed BAPCPA in 2005, it added the "equal monthly amounts" language to § 1325 to prevent debtors from making balloon payments. . . ." (citing *In re Hill*, 397 B.R. 259, 270 (Bankr. M.D.N.C. 2007)); *In re Henning*, 420 B.R. 773, 788-91 (Bankr. W.D. Tenn. 2009) (collecting cases and concluding that the debtors' proposed lump sum payment on the "last day of month 59 of the plan" clearly violated the equal payment requirement of § 1325, and could not be confirmed).

Despite the overwhelming consensus of cases on this issue, a very small minority of courts have permitted a balloon payment. Those courts have generally done so by rationalizing that the balloon payment is a *single* payment and, therefore, not a "*periodic* payment" that is subject to the "equal monthly amount" requirement. *See, e.g., In re Cochran*, 555 B.R. 892 (Bankr. M.D. Ga. 2016).

That argument, however, was also considered by the *In re Hamilton* Court. 401 B.R. 539. The court recognized the argument that a balloon payment is not required to be equal because it is a non-periodic payment "is an invitation . . . to elevate form over substance by allowing the Debtor to sidestep statutory requirements by attaching a label to his plan payments other than the one that actually applies." *In re Hamilton*, 401 B.R. at 543. Another court, after carefully

6

21-45387-mar    Doc 35    Filed 08/27/21    Entered 08/27/21 15:56:45    Page 6 of 15

considering the debtor's proposal, "decline[d] their invitation to engage in this sophistry; payments are payments." *In re Acosta*, No. 08-11411, 2009 WL 2849096, at *3 (Bankr. N.D. Cal. May 7, 2009)

Rightly considered, a "balloon payment" is not simply a single, stand-alone payment that is separate and apart from the periodic payments. Instead, the balloon or lump-sum payment is, by definition, "one *of a series of payments* made over time instead of a one-time payment for the full amount." *In re Shumbera*, No. 6:20-BK-00100-LVV, 2020 WL 7183540, at *2 (Bankr. M.D. Fla. Dec. 3, 2020) (quoting BLACK'S LAW DICTIONARY "Periodic Payment" (11th ed. 2019) (emphasis added)). The balloon payment "is simply the last payment in a series of periodic payments. That it is the last in a series of payments and in a different amount does not exclude a balloon payment from the definition of a periodic payment." *Id.* Therefore, "only a strained reading of the statute's plain language would yield a favorable interpretation for debtors proposing balloon payments in their plans. There simply is no clear path for concluding that he final monthly payment is not a periodic payment." *In re Benedicto*, 587 B.R. at 576 (emphasis in original).

Simply stated, the Bankruptcy Code prohibits the large, back-ended, plan-ending balloon payment for secured creditors that Debtor now proposes. *See In re Erwin*, 376 B.R. 897, 901 (Bankr. C.D. Ill. 2007) (finding that one reason Congress enacted § 1325(a)(5)(B)(iii)(II) was to prevent "backloaded payments, such as

7

balloon payments," or any payments other than those on a monthly basis.).[5] Such a payment proposal does not provide the "equal monthly amounts" that are required under the Code and the Plan, as currently proposed, cannot be confirmed. § 1325(a)(5)(B)(iii)(I).

### B. Debtor's Plan is Infeasible and Cannot Be Confirmed

Assuming, arguendo, that the Debtor's Plan was not otherwise barred by the equal payment provision of §1325(a)(5)(B)(iii), confirmation of the Plan is also prohibited because it is infeasible.

A debtor bears the burden of demonstrating that they will be able to make all payments due under a plan. § 1325(a)(6). And while, notwithstanding other prohibitions, a proposed balloon payment does not render a plan infeasible *per se*, "[u]nless the debtor shows proof that he will be able to pay the balloon payment at the time it comes due, confirmation of a plan with a balloon payment is suspect." *In re Wagner*, 259 B.R. 694, 700 (B.A.P. 8th Cir. 2001) (citing *In re Fantasia*, 211 B.R. 420, 423 (B.A.P. 1st Cir. 1997)). Debtors "must do more than simply state that assets

---

[5] This idea that the change was intended to protect secured creditors finds further support in the structure of BAPCPA itself because the "equal monthly amounts" provision is located in Section 309(c) of Title III of BAPCPA. Title III is labeled, "Discouraging Bankruptcy Abuse," while Section 309 is titled, "Protecting Secured Creditors in Chapter 13 Cases." BAPCPA, Pub. L. No. 109-8, § 309(c), 119 Stat 23 (2005). *See In re Benedicto*, 587 B.R. at 577.

will be sold sometime in the future, they must bear the burden of showing a likelihood of consummating their proposed sale." *In re Tucker*, 34 B.R. 257, 263 (Bankr. W.D. Okla. 1983). Restated, they "must show by definite and credible evidence that they will have the financial ability to make the balloon payment." *In re Fantasia*, 211 B.R. at 423.

Taking into account "the propriety of the balloon payment under the totality of the circumstances," *see In re Gregory*, 143 B.R. 424, 426 (Bankr. E.D. Tex. 1992) (citing *Matter of McClaflin*, 13 B.R. 530, 533 (Bankr. N.D. Ill. 1981)), Debtor has failed to put forth any evidence to carry her burden. She has merely set forth a bare assertion that she will sell her home in the fifth year of the plan and then make a large balloon payment to successfully complete the plan. But there is no evidence that the sale will occur and, even if it does, on what terms. That falls short of her burden. *See, e.g., In re Hogue*, 78 B.R. 867, 872 (Bankr. S.D. Ohio 1987) (Debtors "bare assertions that they will sell or refinance their residences at or near the end of their Chapter 13 plans" did not satisfy the requirements for confirmation.").

Upon information and belief, prior to filing bankruptcy Debtor listed her home for sale. She chose among several bids and signed a purchase agreement. She then failed to appear at the closing and, leading up to her petition, refused to consummate the sale with the prospective purchaser. And in her plan, she seeks to reject the

9

21-45387-mar    Doc 35    Filed 08/27/21    Entered 08/27/21 15:56:45    Page 9 of 15

purchase agreement so that she can avoid the sale entirely. And yet she now proposes to fund her plan by selling her home in the fifth year of the plan.

If Debtor was willing to sell her home and pay her secured creditors, she could have done so prior to bankruptcy by fulfilling her obligations under the sales agreement. Or she could do so now, by closing on the sales contract she has already signed. Instead, she seeks to reject the contract and wait five years before attempting to do so again while offering no rationale—much less "proof" or "definite and credible evidence" —why or how she will go through with the later sale. *In re Wagner*, 259 B.R. at 700; *In re Fantasia*, 211 B.R. at 423. Similarly, there has been no evidence offered regarding the future value of the property at issue and no assurances that the purported proceeds necessary to fund the Plan will be obtainable in 2026.[6] *In re Wagner*, 259 B.R. at 700.

Succinctly summarized, Debtor's unspecific Plan appears designed to immediately avoid selling her home and to push off future risk to her secured

---

[6] The lack of any specifics about the proposed sale and future contingency plans, aside from rendering the Plan unconfirmable, also raises other concerns. For example, Debtor has not proposed any plan to pay the IRS's lien in full if the future sales price is insufficient. Because the residence (as non-estate real property vested in Debtor at the Effective Date) will be subject to the retained IRS liens, conceivably Debtor will be in the untenable position of trying to sell property to a new owner subject to the unpaid IRS's liens or, alternatively, the Debtor would be required to seek a certificate of discharge prior to the sale. *See* IRS Pub. 783. Under either scenario, a sale would appear less likely, if possible at all.

10

21-45387-mar    Doc 35    Filed 08/27/21    Entered 08/27/21 15:56:45    Page 10 of 15

creditors. The secured creditors, such as the IRS, are forced to wait in reliance on a plan funded predominantly through gratuitous gifts from others for 59 months before the Plan culminates in a last-minute speculative sale of the very same residence, which sale she now seeks to avoid.

Considering the totality of the circumstances of this plan, *In re Gregory*, 143 B.R. at 426, Debtor has fallen far short of carrying her burden. Debtor has provided "a Chapter 13 plan [that] hinges entirely upon the happening of a speculative, contingent event, scheduled to occur some three to five years from the date of confirmation." *In re Hogue*, 78 B.R. at 873-74. "Such a plan simply cannot meet the feasibility requirement of § 1325(a)(6)." *Id* at 874. *See also In re Lynch*, No. 1-08-46308DEM, 2009 WL 1955748, at *3 (Bankr. E.D.N.Y. July 6, 2009) ("As a general rule, bankruptcy courts have found that a plan which provides for a single lump sum payment to creditors, at or near the end of the plan term . . . is not feasible."); *In re Harris*, 199 B.R. 434 (Bankr. D.N.H. 1996) (balloon payment at end of proposed plan could not satisfy feasibility requirement because there was no proof the necessary funds would be available for the proposed payment). Therefore, because Debtor has not shown her Plan to be feasible, it cannot be confirmed. § 1325(a)(6).

### C. Debtor Cannot Modify the IRS's Secured Claim and Must Pay Interest.

Debtor's Plan, without justification or explanation, proposes to "modify" the IRS's secured claim and pay 0% interest on that claim. Plan, Section III.C, Class 5.2. It is not clear what modification, other than possibly the interest rate, Debtor is proposing. To the extent that Debtor's modification is an effort to permit payment in unequal monthly amounts, the United States objects for the reasons stated above. If, instead, Debtor's intent is to modify the interest rate, that modification is prohibited.

Whenever a Chapter 13 plan proposes to pay a secured claim over time, "interest *must* be paid to achieve the present value of the claim." *In re Taranto*, 365 B.R. 85, 90 (6th Cir. BAP 2007) (emphasis in original) (citing *Till v. SCS Credit Corp.*, 541 U.S. 465, 474 (2004)). *See also* § 1325(a)(5). This is because the "payment of a claim over time is not as valuable to a creditor as an immediate payment of a claim and such payment carries an inherent risk of default by the debtor, in addition to the risk of diminution of value of the claim." *In re Kemmery*, 516 B.R. 485, 489 (Bankr. N.D. Ohio 2014) (citing 11 U.S.C. § 1325(a)(5)(B)(ii); *In re Taranto*, 365 at 90). Instead, the mandatory interest rate for the secured claim of the Internal Revenue Service is that which is in effect under 26 U.S.C. § 6621 for

the calendar month in which the plan is confirmed. § 511(a), (b). Currently, the statutory interest rate is 3%.[7]

Therefore, absent a provision rejecting any "modification" of the IRS's secured claim and providing for accrual and payment of the statutorily required interest, the Plan cannot be confirmed.

5. **Incomplete Disclosure.** Upon information and belief, Debtor may have assets, income sources, or recent transfers that have not been properly valued or adequately disclosed. Absent a full, complete, and honest disclosure of information in the schedules at the inception of the case, the case is tainted and the plan is not confirmable. *See, e.g.*, *In re Jongsma*, 402 B.R. 858 (Bankr. N.D. Ind. 2009) (explaining that an unjustified failure to disclose assets "taints" the case from the beginning and, as the "most critical component of whether or not a case has been filed in good faith," the inadequate disclosure precludes a finding of good faith under § 1325(a)(7)). To the extent that Debtor has not been forthcoming, allowing the protection of bankruptcy and a pursuit of discharge are not warranted. *In re Farouki*, 133 B.R. 769, 776 (Bankr. E.D. Va. 1991) (complete disclosure of

---

[7]Available at https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/correction-programs/vfcp/table-of-underpayment-rates (last visited 8/26/2021).

financial affairs is fundamental to the concept that discharge is only available to totally open and honest debtors), *aff'd sub nom., Farouki v. Emirates Bank International, Ltd*, 14 F.3d 244 (4th Cir. 1994).

**WHEREFORE**, the United States respectfully requests that this Court deny confirmation of Debtor's Plan for the forgoing reasons and grant such further and additional relief as deemed just and appropriate.

Dated: 8/27/2021

SAIMA S. MOHSIN
Acting United States Attorney

/s/*Kevin R. Erskine*
KEVIN R. ERSKINE
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9610
Email: Kevin.Erskine@usdoj.gov

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re: Nazma Khatoon Rizvi, | Case No. 21-45387 |
| | Chapter 13 |
| Debtor. | Hon. Mark A. Randon |
| _____/ | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2021, I electronically filed the Objection By The United States To Confirmation Of Debtor's Proposed Plan using the ECF System which will send notification of such filings to all counsel of record.

/s/*Kevin R. Erskine*
KEVIN R. ERSKINE (P69120)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9610
Email: Kevin.Erskine@usdoj.gov